UNITED STATES of America, Plaintiff–Appellee,

v.

Thomas H. TAYLOR, Jr., a/k/a Seifullah Rahman, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Vernon A. COLLINS, a/k/a Bey Brother, Defendant–Appellant.

Nos. 88–5502(L), 88–5503.

United States Court of Appeals, Fourth Circuit.

Argued July 15, 1988.
Decided Sept. 13, 1988.

John Maurice Hassett (Harold I. Glaser, Fred Warren Bennett, Federal Public Defender, Wanda Keyes Robinson, Asst. Federal Public Defender, Baltimore, Md., on brief), for defendant-appellant.

Howard B. Gersh (Breckinridge L. Willcox, U.S. Atty., Charles P. Scheeler, Asst. U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.

WILKINSON, Circuit Judge:

Thomas H. Taylor, Jr. and Vernon A. Collins appeal their convictions for conspiracy to distribute and possess with intent to distribute heroin, 21 U.S.C. § 846; possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1); and employment of a person under eighteen years of age to possess with intent to distribute heroin, 21 U.S.C. § 845b(a)(1). Collins also appeals his convictions for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Appellants contend that the district court erred in refusing to suppress evidence seized after a stop of Collins' automobile, in refusing to grant appellants' motion for a continuance, and in refusing to invalidate a warrant authorizing a search of Collins' residence. Finding no merit in these contentions, we affirm the judgment of the district court.

I.

On July 10, 1987, agents of the Federal Bureau of Investigation secured a warrant authorizing the search of Vernon A. Collins' residence in Baltimore, Maryland. The affidavit in support of the search warrant contained information from six informants that Collins and Taylor were involved in narcotics trafficking and were partners in a narcotics distribution operation. The affidavit detailed Collins' prior narcotics activity and recounted appellants' criminal histories. Both Collins and Taylor have records that include narcotics violations, handgun violations, and various crimes of violence. One of the FBI's informants described Collins as a "narcotics hit man who is feared throughout the narcotics underworld in Baltimore"; another informant described Taylor as Collins' "main enforcer." The warrant authorized a search for evidence related to narcotics trafficking.

At approximately 5:00 p.m., on July 11, 1987, an FBI surveillance team observed Collins, Taylor, and a youth, subsequently identified as sixteen year-old Thomas Thornton, leave Collins' residence and drive away in Collins' automobile toward Baltimore City. The surveillance team—approximately six vehicles and fourteen agents and officers of the FBI, Internal Revenue Service, and Baltimore City Police—stopped the automobile a short distance from Collins' residence. The officers approached the automobile with their weapons drawn, ordered Collins, Taylor, and Thornton to get out of the car, and frisked them. The frisk of Thornton revealed twenty-eight bags of heroin.

The occupants were then placed under arrest and taken to FBI headquarters in Woodlawn, Maryland. A subsequent search of Collins revealed an additional bag of heroin. Two leather bags containing "tally sheets," money, and appellants' identification were discovered during a search of the automobile. After Collins, Taylor, and Thornton were arrested, the search warrant was executed at Collins' residence. Numerous items were seized, including two handguns and 473 bags of heroin.

On July 22, 1987, a federal grand jury returned a five count indictment against Taylor and Collins. On October 9, 1987, a jury convicted appellants on each count. Collins received thirty-five years imprison-

ment; Taylor twenty years. Both defendants appeal.

## II.

We address here four discrete components of police activity: (A) Was the stop of Collins' automobile permissible? (B) If so, did the show of force in stopping the automobile convert it into an arrest? (C) Was the pat-down search of Collins, Taylor, and Thornton permissible? and (D) Was the subsequent search of Collins' automobile proper? We examine each issue in turn.

### A.

■ Appellants assert that the investigating officers, at the time they stopped Collins' automobile, could not have had a reasonable suspicion that the occupants were engaged in criminal activity. We disagree.

The propriety of investigative stops has long been recognized. A "police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The Fourth Amendment does not require police officers "to simply shrug [their] shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). A brief investigative stop is permissible when the investigating officers have a reasonable suspicion grounded in "specific and articulable facts" that the person stopped is, is about to be, or has been involved in criminal activity. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879; *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). In particular, the Supreme Court has held that law enforcement officers may stop an automobile to investigate a reasonable suspicion that its occupants are engaged in criminal activity. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *United States v. Brignoni–Ponce,* 422 U.S.

873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). *See also United States v. Mobley,* 699 F.2d 172, 174–76 (4th Cir.1983), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1883–84, 76 L.Ed.2d 813 (1983).

A combination of factors justified the investigative stop in this case. The officers possessed a search warrant based upon probable cause to believe that appellants were engaged in narcotics trafficking, that Collins stored heroin in his residence, and that appellants distributed heroin in Baltimore City. At the time of the investigative stop, Collins' automobile was travelling from his residence toward Baltimore City. The combination of these circumstances more than met the threshold test of a reasonable and articulable suspicion and justified the officers' investigative stop of the automobile.

### B.

■ The law enforcement team in this case consisted of fourteen agents and officers of the FBI, Internal Revenue Service, and Baltimore City Police. They arrived on the scene in approximately six police vehicles and used the vehicles to block the progress of Collins' automobile. The officers emerged with weapons drawn and ordered the occupants to get out of the car. Appellants contend that the manner in which the investigating agents carried out the *Terry* stop constituted an impermissible show of force.

Again we disagree. Investigating officers may take such steps as are reasonably necessary to maintain the status quo and to protect their safety during an investigative stop. *Hensley,* 469 U.S. at 235, 105 S.Ct. at 683. Blocking the progress of Collins' automobile with police vehicles and the agents' drawn weapons, for example, were well within the range of permissible police conduct. As this court stated in *United States v. Manbeck,* 744 F.2d 360, 377 (4th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985), "[t]he former is a reasonable way of effectuating the stop of a motor vehicle, and the latter is a justified safety precaution." Although

blockading an automobile and approaching a suspect with drawn weapons are extraordinary measures, such police procedures have been justified in this circuit as a reasonable means of neutralizing potential danger to police and innocent bystanders. *United States v. Perate,* 719 F.2d 706, 709 (4th Cir.1983). *See also United States v. Moore,* 817 F.2d 1105, 1108 (4th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987); *United States v. Seni,* 662 F.2d 277, 283 (4th Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 664 (1982). Here the agents were aware that Collins had been convicted of assault, assault with intent to murder, robbery, a narcotics violation, and escape. Contrary to appellants' assertions, a lawful investigative stop does not become a custodial arrest when circumstances such as these cause police to draw their guns. "A brief but complete restriction of liberty is valid under *Terry.*" *Moore,* 817 F.2d at 1108.

### C.

■ Appellants object further to being "forcibly removed from the vehicle at gunpoint." The investigating officers, however, were permitted to protect themselves by ordering Collins, Taylor, and Thornton out of the automobile. Once a lawful *Terry* stop of an automobile is made, ordering suspects from the vehicle is a valid precautionary measure designed to afford a degree of protection to the investigating officer. *See Pennsylvania v. Mimms,* 434 U.S. 106, 109–11, 98 S.Ct. 330, 332–33, 54 L.Ed.2d 331 (1977). Suspects within an automobile cannot be scrutinized with the same confidence as suspects whose movements are in full view. In addition, whenever there is reason to believe that a suspect is armed and dangerous, officers making a lawful *Terry* stop also may protect themselves by conducting a protective, "pat-down" frisk for concealed weapons. *See Adams,* 407 U.S. at 146, 92 S.Ct. at 1923; *Terry,* 392 U.S. at 23–27, 88 S.Ct. at 1881–83. Such a full protective frisk is only possible where suspects have left their car. We need not repeat the indicia of

danger that warranted the police precautions in this case.

### D.

■ During the pat-down search of the occupants of the automobile, twenty-eight bags of heroin were discovered on Thomas Thornton. Evidence that appellants were using a person under eighteen years of age to transport heroin, combined with the facts and information that initially justified the investigative stop, provided probable cause to arrest the occupants of the automobile. With the discovery of the heroin, the reasonable suspicion that justified the investigative stop ripened into probable cause to arrest Collins, Taylor, and Thornton.

[5] Appellants contend that the protective frisk was a pretextual search for evidence, that the investigating officers engaged in an unconstitutional search of Thornton, and that the fruits of the search —i.e., the twenty-eight bags of heroin— therefore should be suppressed. Fourth Amendment rights are, however, personal rights, *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); Collins and Taylor lack standing to assert vicariously the rights of Thomas Thornton; *see generally Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and the challenged evidence was properly admitted in their trial.

■ Finally, once Collins, Taylor, and Thornton were arrested, the officers were permitted, as a contemporaneous incident of that arrest, to search their persons, *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2630, 61 L.Ed.2d 343 (1979), the passenger compartment of the automobile, and the contents of any containers found within the passenger compartment of the automobile. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). The lawful custodial arrest, standing alone, authorized the search. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). Contrary to appellants' contention, the heroin discovered on Collins, as well as the contents of the two bags found in the

passenger compartment of the automobile, were admissible.

### E.

■ It is important, finally, in reviewing police conduct under the Fourth Amendment, not to lose the forest for the trees. In addition to its discrete categories, the Amendment imposes upon police behavior the ultimate requirement of objective reasonableness, including the mandate that a warrant be secured whenever it is practicable to do so. Viewing the behavior here in its totality, as well as in sequence, the officers' conduct meets that constitutional test. A valid search warrant for the residence had been secured; the actions leading to the arrests had an objective and articulable basis; the amount of force deployed reflected the gravity of the dangers presented; and the public interest in the prevention of criminal activity in contraband was well served. Application of the sanction of suppression here would enforce no "ideals of governmental rectitude," *United States v. Payner*, 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980), and would only "generat[e] disrespect for the law and administration of justice." *Stone v. Powell*, 428 U.S. 465, 491, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 (1976).

### III.

Appellants' other claims of error are similarly without merit.

■ On September 29, 1987, appellants filed a motion to postpone their scheduled trial date because of alleged discovery violations by the government. They recite alleged violations relating to a fingerprint analysis report, a report of hair fiber analysis, and an FBI report detailing the surveillance of Collins' residence on July 11, 1987. We reject appellants' claims that the district court abused its discretion in refusing to grant their motion for a continuance.

First, the government did not delay in forwarding to appellants the results of the fingerprint analysis. Appellants were informed orally of the results on September 22, 1987, and the government forwarded the written results to appellants when the report became available on September 30, 1987. Second, hair fiber analysis was not performed in this case and the government was under no obligation to perform such tests. Finally, the relevant information in the FBI surveillance report, which was inadvertently not forwarded to the United States Attorney's office, and hence not to appellants, until October 5, 1987, was largely duplicative of grand jury testimony already in appellants' possession. Late receipt of this information therefore could not have prejudiced appellants' trial preparation. In short, the district court did not err by denying appellants' motion for a continuance.

■ We also decline to invalidate the warrant that authorized the search of appellant Collins' residence. Collins claims that the fruits of the search should have been suppressed because of alleged misstatements in the warrant's supporting affidavit. *See generally Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978). Contrary to appellant's contention, however, the supporting affidavit was accurate in all material respects. There also was no showing that the affidavit would have been insufficient to support the search warrant had the disputed information been disregarded.

### IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.