974 F.2d 1332
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
HUSSEIN DABBOUS, Defendant-Appellant.
 No. 91-5113.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 4, 1992
Decided: September 3, 1992
 
 Martin S. Baum, Detroit, Michigan, for Appellant.
 Rebecca Adams Lloyd, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Richard Cullen, United States Attorney, Alexandria, Virginia, for Appellee.
 Before RUSSELL and LUTTIG, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Hussein Dabbous appeals his conviction for conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988). Appellant Dabbous raises issues pertaining to his standing to contest a search in violation of the Fourth Amendment, to double jeopardy as it relates to the sufficiency of the evidence to sustain his conviction, and to the effectiveness of his counsel at trial. Finding no merit in Dabbous' contentions on appeal, we affirm the judgment of the district court.
 
 I.
 
 2
 In February, 1990, Appellant Hussein Dabbous responded to an invitation from government informant Mohammed Alawi to meet with purported drug traffickers from Washington, D.C., who wished to establish a heroin distribution network. Sami Ballout, another government informant, and Alawi then participated in a videotaped meeting with Dabbous and undercover Drug Enforcement Agency ("DEA") agent Hollis Williams in Detroit, Michigan. At the meeting, Dabbous stated he could provide the distribution network with heroin in the two to three kilogram quantities which the informants represented themselves as seeking. During most of this meeting, the participants spoke in an Arabic language. However, Dabbous spoke English to Williams at two points: first, to offer Williams a sample of cocaine, and second, to explain to Williams that he would obtain a quantity of heroin to sell to the distribution network within four or five days of the meeting. The videotape of the meeting between Appellant Dabbous, informants Alawi and Ballout, and DEA agent Williams was later admitted at Dabbous' trial in the United States District Court for the Eastern District of Virginia.
 
 
 3
 In early April, 1990, Dabbous contacted government informant Ballout at Ballout's home near Alexandria, Virginia, and told Ballout that a shipment of heroin had arrived from Lebanon, and that he had a 300 gram quantity available for sale at a price of $140 per gram. Ballout recorded this telephone conversation, and the tape was later admitted at Dabbous' trial. Dabbous then informed Ballout that he would fly from Detroit, Michigan, to Washington, D.C., for a transaction with a courier who would carry the heroin. Ballout contacted Drug Enforcement Agency ("DEA") agents with this information.
 
 
 4
 On April 5, 1990, Wayne County Sheriff Leslie Fountain and Wayne County Sheriff Lieutenant Jerry Heard, both DEA task force members, observed Dabbous, Alawi, and a third man at the Detroit Airport. Heard observed that Dabbous and the third man fit a drug courier's profile in that they purchased tickets immediately before their flight, carried little baggage, appeared nervous, and gave nervous or suspicious responses when questioned about details of their trip. Heard identified himself with a law enforcement badge and credentials, and requested to examine all three mens' airplane tickets. Sheriffs Heard and Fountain found that all of the tickets were for a two-day trip to Washington, D.C. Fountain asked each of the three men if they spoke English and could understand his questions. All three responded affirmatively. Fountain then asked each of three men if Heard and Fountain could search their persons and bags for any narcotics and narcotics-related proceeds. Dabbous, government informant Alawi, and the third man all consented to be searched. Upon searching the third man, later identified as Mahir Dib, Heard discovered that he was in possession of over 300 grams of heroin contained in a plastic bag taped to his back. The Sheriffs arrested Dib; Appellant Dabbous and informant Alawi were permitted to leave. Michael Lorence, a Dearborn, Michigan, police officer assigned to the DEA's Detroit office, later ascertained from Dib's Michigan driver's license that Dib lived at the same address as Dabbous in Dearborn, Michigan. The DEA subsequently determined that Dib was Dabbous' brother-in-law.
 
 
 5
 Government informant Ballout testified that, after Dib was arrested, Dabbous called him to ask for money to post bail for Dib. Hollis Williams, the undercover DEA agent who met with Dabbous in Detroit, testified that Dabbous accused him and"Sami Ballout of being the police." (J.A. at 160.) Williams testified that he assured Dabbous that neither he nor Ballout was the police, and that Dabbous then explained that Dib "was like family to him." (J.A. at 160.) Dabbous also asked Williams for money to post bail for Dib. Williams further testified that Dabbous stated that this was the "first time that his operation had been caught coming through the airport." (J.A. at 161.) After receiving additional assurances from DEA agent Williams that he was not a policeman, Dabbous stated that he still had one-half of a kilogram of heroin that he could provide to the distribution network. Williams represented that he remained interested in purchasing the heroin, but that he wished to postpone any transaction due to concerns about Dib's arrest and any resulting investigation.
 
 
 6
 The DEA's investigation terminated with Dabbous' arrest in Detroit.
 
 II.
 
 7
 Mahir Dib, the alleged courier, was first indicted in the United States District Court for the Eastern District of Michigan in August, 1990, for conspiracy to possess and distribute heroin in violation of 21 U.S.C. § 841(a)(1), 846 (1988). However, the District Court for the Eastern District of Michigan concluded the government did not show that Dib had voluntarily consented, within the meaning of United States v. Mendenhall, 446 U.S. 544, 557-59 (1980), to Sheriff Lieutenant Heard's search of his person. The District Court for Eastern District of Michigan therefore found that the 300 grams of heroin which Heard discovered taped to Dib's back was seized in violation of Dib's Fourth Amendment rights. Accordingly, on August 16, 1990, the District Court for Eastern District of Michigan granted Dib's pretrial motion to suppress admission of the heroin at Dib's trial, and then also granted Dib's motion to dismiss the case against him. On October 10, 1990, the United States Court of Appeals for the Sixth Circuit granted the government's motion pursuant to Fed. R. App. P. 42(b) to voluntarily dismiss its appeal of the district court's suppression and dismissal ruling.
 
 
 8
 However, on February 26, 1991, both Dib and Appellant Dabbous were indicted in the United States District Court for the Eastern District of Virginia for conspiracy to possess with intent to distribute one kilogram or more of heroin, and for conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C.ss 841(a)(1), 846 (1988). Dib made no appearance in the district court and remains at large. At Dabbous' trial, the government produced evidence showing the facts related above, and Dabbous was convicted on April 17, 1991. Dabbous appeals.
 
 III.
 
 9
 Dabbous first argues that the district court erred in admitting at trial the 300 grams of heroin which Wayne County Sheriff Lieutenant Jerry Heard discovered taped to co-defendant Dib's back. Dabbous argues that, because the United States District Court for Eastern District of Michigan previously determined that the heroin was inadmissible against Dib because Heard seized the heroin in violation of Dib's Fourth Amendment rights, the heroin should also be inadmissible as against Dabbous. We find this argument without merit.
 
 
 10
 This circuit has observed that "Fourth Amendment rights are ... personal rights," which co-defendants "lack standing to assert vicariously." United States v. Taylor, 857 F.2d 210, 214 (4th Cir. 1988) (citing Brown v. United States, 411 U.S. 223, 230 (1973); Rakas v. Illinois, 439 U.S. 128 (1978)). In Taylor, agents of the Federal Bureau of Investigation, after drawing their weapons, approached a car occupied by two adults and a sixteen year-old juvenile, and ordered the three individuals to get out of the car. Upon conducting a protective frisk of all three individuals, the agents discovered twenty-eight bags of heroin on the person of the juvenile. 857 F.2d at 212. On appeal of a conviction under 18 U.S.C. § 922(g)(1) (1988), and convictions under 21 U.S.C. §§ 841(a)(1), 845b(a)(1), 846 (1988), the two adult defendants challenged the admission of the seized heroin at their trial, arguing that "the protective frisk was a pretextual search for evidence, that the investigating officers engaged in an unconstitutional search of [the juvenile], and that the fruits of the search-i.e., the twentyeight bags of heroin-therefore should be suppressed." 857 F.2d at 214. After noting that the juvenile's Fourth Amendment rights were personal to him, and could not be invoked by the two adult defendants, this circuit concluded that "the challenged evidence was properly admitted in their trial." Id.
 
 
 11
 Appellant Dabbous offers no plausible reason for a different result here. Though the District Court for the Eastern District of Michigan concluded that Dib's Fourth Amendment rights were violated, Dabbous simply lacks the standing to object to that violation. We conclude the district court below did not err in admitting into evidence at Dabbous' trial the 300 grams of heroin seized from Dib at the Detroit airport.
 
 
 12
 Dabbous next argues the evidence which the government presented at his trial was insufficient to support his conviction for conspiracy to possess and distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988). On this issue, Dabbous essentially makes a double jeopardy argument. Dabbous first asserts that, due to the dismissal of the government's prosecution of alleged courier Mahir Dib in the Eastern District of Michigan after that district court granted Dib's motion to suppress the seized heroin, the government is now barred on double jeopardy grounds from prosecuting Dib on the conspiracy charges in the Eastern District of Virginia. Since the government cannot prosecute Dib for conspiracy under 21 U.S.C. §§ 841(a)(1), 846, Dabbous argues, the government cannot show that Dib entered an agreement with Dabbous to possess and distribute heroin. Absent evidence of such an agreement, Dabbous continues, the government cannot show that Dabbous conspired with Dib to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 846.* Dabbous thus contends that the district court should have ruled that the evidence was insufficient to support Dabbous' conviction.
 
 
 13
 Without examining other flaws which may be present in Dabbous' argument, we note that Appellant's position fails on the law of double jeopardy. The concept of "attachment of jeopardy" defines a point in criminal proceedings at which the purposes and policies of the Double Jeopardy Clause are implicated. Jeopardy does not attach until a defendant is "put to trial," which in a jury trial occurs when the jury is empaneled and sworn and in a nonjury trial when the court begins to hear evidence. Serfass v. United States, 420 U.S. 377, 388 (1975). In view of Serfass, 420 U.S. at 388, we conclude that Dib was not put to trial in the Eastern District of Michigan. A jury was never empaneled in the proceedings against him there, nor did the district court begin to hear the evidence at a trial; rather, the government's case against Dib was dismissed upon Dib's pre-trial motion. Since Dib was never subjected to double jeopardy on charges under 21 U.S.C. § 841(a)(1), 846, the government was not prohibited on double jeopardy grounds from presenting evidence in the Eastern District of Virginia that Dabbous was Dib's co-conspirator in the above-detailed conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988). Accordingly, we conclude that the evidence properly presented at Dabbous' trial was sufficient to support his conviction.
 
 
 14
 Finally, Dabbous argues that he was denied his Sixth Amendment right to effective assistance of counsel at trial. Specifically, Dabbous contends that he was denied the effective assistance of counsel in four respects: first, his counsel chose not to file motions for discovery, for the suppression at trial of the heroin seized from Dib, and for dismissal of the proceedings against him due to insufficient evidence of a conspiracy between Dabbous and Dib; second, counsel allowed Dabbous to plead not guilty; third, Dabbous was unable to communicate in a meaningful way with counsel due to Dabbous' difficulty in speaking English; and fourth, counsel allowed defendant to first be sentenced on a prior guilty plea that Dabbous entered in the Eastern District of Michigan. We find each of these contentions meritless.
 
 
 15
 To show that counsel's assistance at trial was so ineffective as to require reversal of a conviction, Dabbous must make the two part showing set forth in Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 16
 First, the defendant must show that counsel's assistance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the"counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 17
 Id. at 687.
 
 
 18
 We find unpersuasive Dabbous' first contention, i.e., that he was denied his Sixth Amendment right to effective counsel because his trial attorney did not file discovery motions, did not file a motion to suppress the heroin seized from Dib, and did not file a motion for dismissal of the proceedings against him due to insufficient evidence of a conspiracy between Dabbous and Dib. As to Dabbous' observation that his attorney filed no discovery motions, we note that the U.S. Attorney for the Eastern District of Virginia and Dabbous' counsel executed that district's standard discovery order, whereby the U.S. Attorney agreed to open files in order to facilitate defense discovery. Dabbous thereby received all discovery that motions filed by an attorney could have obtained for him; the absence of a discovery motion cannot be viewed as deficient performance by counsel within the meaning of Strickland v. Washington, 466 U.S. 668, 687 (1984). With regard to Dabbous' counsel's failure to file a motion to suppress admission of the heroin seized from Dib, as our discussion above of United States v. Taylor, 857 F.2d 210 (4th Cir. 1988) indicates, such a motion would have been fruitless. Dabbous' attorney's failure to file such a motion cannot be said to be ineffective assistance of counsel. Similarly, with regard to Dabbous' counsel's failure to file a motion to dismiss the proceedings against him due to double jeopardy as it relates to insufficient evidence of a conspiracy between Dabbous and Dib, as our discussion above of Serfass v. United States, 420 U.S. 377, 388 (1975), indicates, such a motion would also have been fruitless. Again, Dabbous' attorney's failure to file such a motion cannot be said to be ineffective assistance of counsel.
 
 
 19
 Dabbous' second contention, i.e., the fact that his counsel allowed him to plead not guilty amounted to ineffective assistance, is equally unavailing. The government offered Dabbous a plea bargain on three occasions-before his indictment, after his indictment and during the course of his trial. However, Dabbous "kept telling" his attorney that "he would take his chances, that he didn't want to plea," even though his attorney "encouraged him to consider the government's offer." (J.A. at 319.) Dabbous, in fact, initially agreed to a plea offer and signed a consent form indicating his wish to plead guilty, but subsequently withdrew that consent. (See J.A. at 99.) On these facts, any contention that Dabbous' attorney failed to adequately advise Dabbous of his option to plead guilty, or somehow compelled Dabbous to plead not guilty, is simply not credible.
 
 
 20
 Dabbous next argues that since he was unable to speak English, he could not communicate with his counsel in an effective fashion, and was thereby denied effective assistance of counsel. This argument is also meritless. The district court found, based on tapes of Dabbous' meeting with government informants Sami Ballout and Mohammed Alawi and with undercover DEA agent Hollis Williams in Detroit, Michigan, that Dabbous was conversant in English, and emphatically expressed this finding in the record. (See J.A. at 354.) Moreover, in preparing for trial, Dabbous' attorney hired an interpreter to review in Lebanese the government's case against Dabbous. Dabbous' trial attorney stated, "Mr. Dabbous sat in my office with the interpreter all day one day before trial and talked with the interpreter, went over the tapes, went over the transcripts." (J.A. at 318.) Moreover, the interpreter was present in the courtroom the "entire day" of Dabbous' trial in the event that Dabbous indicated any difficulty in understanding the proceedings against him. On these facts, any contention that Dabbous was denied effective assistance of counsel at trial because he could not communicate effectively with his attorney is not credible.
 
 
 21
 Dabbous' fourth contention, that his counsel gave him ineffective assistance at trial by allowing him to first be sentenced on a prior guilty plea in the Eastern District of Michigan, fares no better. As a result of a prior sentence in the Eastern District of Michigan on an unrelated previous offense, Dabbous' Sentencing Guidelines criminal history category was increased from "I" to"II" at sentencing for the offense of conviction below, and this change resulted in an increase in Dabbous' sentencing guidelines range for the instant offense from 151-188 months to 168-210 months. (J.A. at 411, 417). Dabbous argues that his attorney's performance was deficient in that his attorney failed to devise a means of having Dabbous sentenced in Eastern District of Virginia on the offense of conviction below before he was sentenced in the Eastern District of Michigan on the previous unrelated conviction, so that his criminal history category would be lower upon sentencing for the offense of conviction below, and would have resulted in a lesser sentence. This argument simply has no merit. First, Dabbous cites no authority for the proposition that his sentencing on an unrelated offense in the Eastern District of Michigan prior to his sentencing on the conviction below resulted in legally cognizable detriment to the Appellant. Second, even assuming that his sentencing on an unrelated offense in the Eastern District of Michigan prior to his sentencing on the conviction below worked some legally cognizable detriment, Dabbous himself effected the order of the sentencings for the two offenses. On June 24, 1991-after Dabbous was convicted on the offense charged below-Dabbous dispensed with his court appointed counsel and retained new counsel. Upon retaining new counsel, Dabbous then moved for an extension of his sentencing on the conviction in the Eastern District of Virginia, based on the assertion that the newly retained counsel required additional time to prepare. Consequently, Dabbous was sentenced on the offense of conviction below on July 26, 1991, having previously been sentenced in the Eastern District of Michigan for the unrelated offense on July 15, 1991. We fail to perceive how this course of events impugns the performance of Dabbous' attorney such that Dabbous may plausibly claim that he was rendered ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 668 (1984). We thus conclude that none of Dabbous' contentions that he was denied effective assistance of counsel in violation of the Sixth Amendment warrant reversal of his conviction under 21 U.S.C.ss 841(a)(1), 846 (1988).
 
 
 22
 For the foregoing reasons, Dabbous' conviction in the district court is hereby
 
 
 23
 AFFIRMED.
 
 
 
 *
 Such an agreement between Dabbous and another person, not a government agent, is an essential element of the conspiracy charged under 21 U.S.C. §§ 841(a)(1), 846 (1988). See,e.g., United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991)