14 F.3d 598
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Paul M. OMAR, Defendant-Appellant.
 No. 93-5053.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 29, 1993.
Decided: Dec. 23, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Danville.
 Michael Morchower, Morchower, Luxton & Whaley, for Appellant.
 Peter Haggerty, for appellee.
 E. Montgomery Tucker, U.S. Atty., Stephen U. Baer, Asst. U.S. Atty., for appellee.
 W.D.Va.
 AFFIRMED.
 Before HALL, WILKINSON and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant raises several challenges to his conviction on a single count of unlawful possession of a firearm in violation of 18 U.S.C. Secs. 922(g)(1) and 924(e)(1). We find that the challenges lack merit and affirm the conviction.
 
 I.
 
 2
 On November 14, 1991, officers from the Danville City Police Department executed a search warrant at the home of Paul M. Omar, the appellant. After entering the house from its back porch, the officers found Omar in one of the house's three bedrooms. The police escorted Omar, who was the only person present in the house, to the kitchen. The officers then asked him if any firearms were in the house, and Omar responded that a .32 caliber revolver was located behind the headboard of the bed on which he had been lying. One of the officers retrieved the weapon from its hidden position and unloaded it.
 
 
 3
 On December 6, 1991, a Danville police officer and an investigator from the Bureau of Alcohol, Tobacco and Firearms ("ATF") returned to Omar's house for further questioning. The ATF agent testified at trial that Omar told them he had received the gun for $25 in a pawn transaction. According to the agent, Omar claimed he was not the owner of the gun although he indicated that he took possession of the weapon.
 
 
 4
 At trial, Omar testified that it was actually his nephew, Thurman Carter, who received the gun in a pawn and placed it behind the headboard. Carter similarly testified that he personally exchanged $25 for the weapon and hid it in the bedroom. Omar also presented several witnesses who indicated that they lived with him in the house at the time of the search, and that they could use the"guest bedroom" in which the gun was found.
 
 
 5
 The jury found Omar guilty of unlawful possession of a weapon by a convicted felon in violation of 18 U.S.C. # 8E8E # 922(g)(1) and 924(e)(1). The district court sentenced him to 240 months imprisonment. Omar now contends that the conviction must be reversed because (1) there was insufficient evidence to convict, (2) evidence of drug activity was improperly admitted, (3) the government failed to provide him with evidence it used at trial in a timely manner, and (4) the district court permitted admission of overly prejudicial testimony. We address each contention in turn.
 
 II.
 
 6
 Omar contends that the government failed to present sufficient evidence to support a finding that he constructively possessed the gun. Omar argues that three individuals occupied the house in which the gun was found, and that the guest bedroom where the gun was located could be used by any of the occupants. Appellant further notes his witnesses' trial testimony indicating that it was his nephew, and not him, who actually received the gun in a pawn. Omar concludes that the evidence is legally insufficient for a conviction.
 
 
 7
 In reviewing the jury's verdict, we must "view the evidence and reasonable inferences drawn from it in the light most favorable to the government and uphold the verdict if substantial evidence supports it." United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992). Applying this standard of review, we find the evidence is sufficient to support the jury's verdict. First, the jurors were free to conclude that Omar possessed the gun even if they believed that other house occupants shared in that possession. See United States v. Jones, 945 F.2d 747, 749-50 (4th Cir.1991). Such a finding would be permitted even if, as is certainly not the case here, Omar did not own the house where the gun was found. See United States v. Wilson, 922 F.2d 1336 (7th Cir.1991); United States v. Poore, 594 F.2d 39 (4th Cir.1979). Second, the uncontested evidence before the jury was sufficient for a finding of constructive possession. Omar owned the house, held one of the two keys to the room where the gun was kept, stored his money in that room, had unrestricted access to the gun, and was the only person present in the house when the police executed the search warrant. In fact, the police found Omar lying on the bed where the gun had been stored. A rational trier of fact could easily conclude that Omar's "knowledge of the gun's location and his unhindered access to it ... gave him constructive possession of the weapon." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990).
 
 III.
 
 8
 Appellant next claims that the testimony of Officer C.I. Slayton that cocaine and drug paraphernalia were discovered in Omar's home was admitted in violation of Federal Rule of Evidence 608(b). Officer Slayton's testimony was elicited during the prosecution's rebuttal case, after several defense witnesses had denied knowledge of any drug activity. Rule 608(b) prohibits the introduction of extrinsic evidence of specific conduct when presented solely to impeach the credibility of a witness.
 
 
 9
 Omar's Rule 608(b) contention fails because the evidence of drug activity was introduced not to impeach the credibility of any defense witness, but as further proof of a material issue in the case--namely, Omar's possession of the gun. Evidence of drug activity in the house cast doubt on the claims of several defense witnesses, including Thurman Carter, that they actually lived in the house. The witnesses' lack of knowledge concerning drugs in the house suggested that they did not exercise dominion and control over the house, the "guest" bedroom, or the gun hidden in the bedroom. Evidence such as this, relating to "dominion and control" over the weapon, necessarily concerns a material issue--indeed, the central issue--of this case. Officer Slayton's testimony was not introduced to raise doubts about the credibility of any defense witness; rather, it was intended to raise questions concerning the witnesses' relationship to the gun.
 
 
 10
 While it is true that this circuit has long recognized the rule "that extraneous evidence of misconduct cannot be introduced to impeach a witness," United States v. Blackshire, 538 F.2d 569, 572 (4th Cir.1976), it is equally true that "Rule 608(b) should not be read so broadly as to disallow the presentation of extrinsic evidence that is probative of a material issue in a case." United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 531 (4th Cir.1985); see also Weinstein & Berger, 3 Weinstein's Evidence p 608, at 608-31 (1993). Interfering with the admission of such extrinsic evidence would be inconsistent with "the goal of ascertaining the truth in judicial proceedings." Smith Grading & Paving, 760 F.2d at 531. As such, Omar's Rule 608(b) claim must fail.
 
 IV.
 
 11
 Omar's third contention is that the district court erred by refusing to grant his motion for a mistrial based on the government's failure to provide to the defense an incriminating document possessed by the ATF agent. On December 6, 1991, Omar refused to sign the ATF agent's handwritten "statement," and the agent typed up a "Report of Interview" summarizing their discussion. The unsigned statement includes the following passage concerning Omar's pawn for the gun:
 
 
 12
 ... some time ago a guy came by my home in the evening.... He said he needed $25.00 so he offered a gun as collateral for the $25.00. I gave him $25.00 and he left.
 
 
 13
 The ATF agent's summary of the interview includes nearly identical language:
 
 
 14
 ... some time ago a guy came by my home in the evening.... He said he needed $25.00 so he offered a gun as collateral for the $25.00 and he left.
 
 
 15
 Omar now claims that the government's failure to provide the defense with a copy of the unsigned statement prior to trial constituted a violation of Federal Rule of Criminal Procedure 16(a), and that a mistrial is therefore required.
 
 
 16
 Omar's contention must be rejected because, despite his assertions, he has failed to show that he suffered any prejudice from the lack of production. "The burden rests with the party claiming a violation of Rule 16 to demonstrate resulting prejudice." United States v. Spinosa, 982 F.2d 620, 631 (1st Cir.1992). In the absence of such a showing, we will not reverse the district court based upon a mere technical violation of the Rule. In United States v. Taylor, 857 F.2d 210 (4th Cir.1988), for example, we upheld a district court's refusal to grant a continuance when the prosecution failed to provide defense counsel with an FBI surveillance report until a late date. We reached that result, in part, because the defendant already possessed evidence largely duplicative of the materials unintentionally withheld by the government. Id. at 215. Here, Omar was in possession of the ATF agent's "Report of Interview" prior to trial, evidence which is substantially identical to the unsigned statement that he claims was improperly withheld. Under these circumstances, we cannot say the district court erred by refusing to grant appellant's motion for mistrial.
 
 V.
 
 17
 Omar's final contention is that the district court erred by permitting an officer to testify as to the primary purpose of the November 14, 1991, search warrant. Omar argues that such testimony should have been held inadmissable under Federal Rule of Evidence 403. We disagree.
 
 
 18
 This court "will not disturb an evidentiary decision that involves balancing the probative value of evidence against its prejudicial effect unless the district court abused its discretion." United States v. Fells, 920 F.2d 1179, 1182 (4th Cir.1990); see also United States v. Peay, 972 F.2d 71, 76 (4th Cir.1992). The district court proceeded cautiously with respect to the challenged testimony, allowing its admission only after the defendant's cross-examination of prosecution witnesses made the purpose of the search relevant. Counsel for the defendant questioned several officers as to why the gun was not dusted for fingerprints, as is typical for evidence to be used in a prosecution for illegal possession of a weapon. This line of inquiry invited a response addressing the context in which the gun was confiscated, which would explain why such procedures were not necessary. The court's careful consideration of this issue suggests that it responsibly exercised its discretion. We therefore reject Omar's contention.
 
 VI.
 
 19
 Because appellant's assignments of error are without merit, his conviction is
 
 
 20
 AFFIRMED.