**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5622

BOBBY SCEAN SANG,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CR-94-271)

Submitted: April 23, 1996

Decided: June 12, 1996

Before HALL and HAMILTON, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

A. Wayne Harrison, HARRISON, NORTH, COOKE & LAN-
DRETH, Greensboro, North Carolina, for Appellant. Walter C. Hol-
ton, Jr., United States Attorney, Clifton T. Barrett, Assistant United
States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bobby Sang ("Sang") pled guilty to possessing one kilogram of crack cocaine with intent to distribute. Prior to entering his plea, Sang moved to suppress the evidence seized against him. The district court denied the motion. Sang entered a conditional guilty plea, preserving his right to appeal the denial of his suppression motion. Because we find that Sang was lawfully stopped and detained and, thus, the consensual search of his vehicle was proper, we affirm the denial of the suppression motion and Sang's conviction.

Trooper T.L. Cardwell ("Cardwell") of the North Carolina State Highway Patrol, was on patrol when he observed a car drifting and weaving. Because Cardwell suspected that the driver of the car was driving while impaired, Cardwell stopped the car. After the car stopped, Paul Castro ("Castro") exited and produced his license. Castro then asked his passenger, Bobby Sang ("Sang"), for the vehicle registration. Castro gave the registration to Cardwell.

Cardwell asked Castro to get in the patrol car. Cardwell told Castro that he stopped him because he suspected that Castro was driving impaired. Castro stated that he was very tired because he had been driving for seven straight hours. Cardwell asked Castro if he had ever received any citations in North Carolina. Castro responded that he had received one in Charlotte as the result of an accident. Cardwell performed a license check and discovered that Castro's driving privileges were suspended both in North Carolina and New York. Cardwell told Castro that he was giving him a citation and then proceeded to write out a citation for driving without a valid license.

While completing the citation, Cardwell asked Castro where he was headed. Castro said that he and his friend, Sang, were traveling to Georgia so that Sang could pay off a ticket. Then they were going

2

to Jacksonville, Florida, to visit Castro's mother for a week. After which, they planned to return to New York.

While still writing the citation, Cardwell asked Castro if Sang had a license and Castro said that he did. Cardwell then stopped writing the citation, left the patrol car, and went over to check Sang's license. Cardwell asked Sang if he had a license. Sang replied that he did. Sang, however, was unable to locate his license. Cardwell asked Sang about his travel plans. Sang said that he and Castro were going to Charlotte to see his cousin and get the title to the car. Cardwell noticed that during this discussion, Sang appeared very nervous.

Noting the discrepancies in the stories and Sang's nervousness, Cardwell returned to his patrol car and requested back-up. Cardwell completed the citation and asked Castro to go back to his car. Cardwell then motioned for Sang to come to the patrol car. Sang sat in the car. Cardwell asked Sang if there was anything illegal in the car. Sang said no. Cardwell asked if he could search the car. Sang gave his oral consent and signed a consent form. Cardwell searched the car and discovered a kilogram of crack behind the glove box.

Sang first contends that the district court erred in denying his suppression motion because the vehicle stop was unwarranted. He further claims that in any event, Cardwell's questions subsequent to the stop exceeded the scope of <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

The Supreme Court in <u>Terry</u>, held that an officer who has a reasonable belief that crime is afoot may stop an individual. Further, police officers may stop a vehicle upon a reasonable and articulable suspicion that the occupants are involved in past or present criminal activity. <u>United States v. Hensley</u>, 469 U.S. 221, 226 (1985); <u>United States v. Mobley</u>, 699 F.2d 172, 174-75 (4th Cir.), <u>cert. denied</u>, 461 U.S. 909 (1983). Cardwell observed Sang's car weaving on the highway. Cardwell had a reasonable articulable suspicion that the driver of the vehicle was driving impaired. Thus, the initial stop was authorized. <u>United States v. Taylor</u>, 857 F.2d 210, 213 (4th Cir. 1988).

After making an authorized, investigatory stop of a car, a patrolman is authorized to ask the driver for his driver's license and vehicle registration, conduct a computer check, and then issue a ticket if nec-

3

essary. <u>United States v. Rusher</u>, 966 F.2d 868, 876 (4th Cir.), <u>cert. denied</u>, 506 U.S. 926 (1992). If the driver has a valid license and is able to show that he was entitled to drive the car, the patrolman is required to allow him to leave. <u>Id.</u> If the patrolman detains the car and conducts further questioning, the stop has progressed beyond the scope of <u>Terry</u> and is illegal unless the officer has a reasonable suspicion of a serious crime. <u>Rusher</u>, 966 F.2d at 876-77.

Cardwell determined that Castro did not have a valid license and Cardwell was, thus, authorized to issue a citation and ask further questions to determine if Castro's passenger could lawfully drive the car. While writing the citation, Cardwell asked permissible questions about Castro's travel plans. <u>See United States v. Rivera</u>, 867 F.2d 1261, 1263 (10th Cir. 1989) (officer could legitimately ask questions about travel plans). Then while checking to see if Sang had a license, Cardwell asked Sang about his travel plans. Because Castro's and Sang's travel plan stories conflicted and because Sang appeared to be extremely nervous, Cardwell developed a suspicion that Castro and Sang were involved in a serious crime. Thus, when Cardwell detained Castro and Sang and asked them further questions, including a request for consent to search their car, the stop, although it had progressed beyond the scope of <u>Terry</u>, was not illegal because Cardwell had a reasonable suspicion of a serious crime. <u>Rusher</u> , 966 F.2d at 876-77. Therefore, Sang's consent to search the vehicle was lawfully obtained.

Accordingly, we affirm the district court's denial of Sang's motion to suppress and we uphold the conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

4