**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19–4324**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TERRILL BERNARD WEATHERSPOON,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Thomas D. Schroeder, Chief District Judge. (1:18–cr–00333–TDS–2)

Argued: April 30, 2020                          Decided: August 7, 2020

Before GREGORY, Chief Judge, DIAZ, and THACKER, Circuit Judges.

Affirmed by unpublished opinion. Chief Judge Gregory wrote the opinion, in which Judge Diaz and Judge Thacker joined.

**ARGUED:** George Entwistle Crump, III, Rockingham, North Carolina, for Appellant. Kyle David Pousson, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

GREGORY, Chief Judge:

Terrill B. Weatherspoon was charged with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After the district court denied Weatherspoon's motion to suppress the firearm and his statement made during police detention, Weatherspoon entered a conditional plea of guilty. Weatherspoon appeals the district court's denial of the motion to suppress, arguing the officers lacked reasonable suspicion for his subsequent search. For reasons that follow, we affirm the district court's judgment.

I.

A.

When reviewing the denial of a motion to suppress, we view the facts in the light most favorable to the Government, the prevailing party below. *United States v. Green*, 740 F.3d 275, 277 (4th Cir. 2014). The facts of this case involve events surrounding the execution of an arrest warrant for Joshua Espinoza.[1] Espinoza was a known gang member with a violent criminal history. Espinoza's criminal history included "an arrest for assault with a deadly weapon with intent to kill, discharging a firearm into occupied property," an arrest for robbery with a dangerous weapon, and several arrests for being a felon in possession of a firearm. J.A. 60. Additionally, Espinoza was a suspect in a jewelry store

_____

[1] The facts recounted here are taken from the district court's findings of fact. J.A. 59-69.

robbery with accomplices, and was also believed to have been involved in a shootout at a gas station.[2]

The Federal Bureau of Investigation ("FBI") tracked Espinoza to a Days Inn motel in Durham, North Carolina. On July 18, 2018, the FBI planned to arrest Espinoza on an outstanding warrant for driving while intoxicated. That morning, while surveilling the premises, law enforcement observed Espinoza exit his room on the second floor of the motel. Espinoza walked through the exterior walkway and down a stairwell towards the parking lot with two men, later identified as Nigel Hemby and Weatherspoon. The agents began to effect the arrest of Espinoza and yelled "police" and "stop." J.A. 61. Although the agents were not in uniform, they had lettering displayed on their clothing that indicated "FBI," "POLICE," et cetera. J.A. 60.

When Espinoza saw the agents approaching, he threw the items in his hand to the ground and ran. The agents chased after Espinoza. As they ran past Hemby and Weatherspoon, one of the agents pushed Hemby to the ground and ordered both Hemby and Weatherspoon to sit on the ground and raise their hands. FBI Special Agent Maria Jocys stayed with Hemby and Weatherspoon with her gun drawn.

---

[2] In its findings of fact, the district court stated that law enforcement knew "that Mr. Espinoza had recently been in a shootout." J.A. 61. Weatherspoon challenges this finding of fact because Special Agent Jocys testified that law enforcement only believed Espinoza was a suspect in the gas station shootout. J.A. 24. We agree the district court's factual finding was clear error. Accordingly, we adopt Weatherspoon's factual assertion that Espinoza was only a suspect in the shootout. Although Weatherspoon did not challenge the district court's statement that Espinoza was involved in the jewelry store robbery, Espinoza was also only a suspect in that robbery. J.A. 24. However, our resolution of this appeal does not turn on these facts.

Special Agent Jocys told Weatherspoon and Hemby to keep their hands up, pointing her firearm at them while she waited for backup. She was the only agent with them at the time, as the other officers were chasing Espinoza. Special Agent Jocys noticed that Weatherspoon began to move slightly to his left and asked whether either of the men had a gun. Weatherspoon responded, "I do." J.A. 62. Special Agent Jocys pointed her weapon and told Weatherspoon that if he moved, she would kill him. At this point, Espinoza had not been captured. Espinoza had fled toward the back of the motel, across the courtyard, past another hotel, and into the woods.

When another officer arrived to assist Special Agent Jocys, they placed Weatherspoon and Hemby in handcuffs, and conducted a patdown of Weatherspoon. The officers found a .40 caliber handgun on his left hip concealed under his shirt.

B.

A grand jury returned an indictment charging Weatherspoon with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Weatherspoon moved to suppress his statement admitting that he had a firearm. He also moved to suppress the weapon that was discovered during the patdown search that followed, arguing that he had been unconstitutionally seized and searched. After an evidentiary hearing, the district court denied the motion.

Weatherspoon subsequently entered a conditional guilty plea, reserving his right to appeal the denial of the motion to suppress. He was sentenced to ninety-four months imprisonment to be followed by three years of supervised release. This appeal followed.

4

II.

We review the district court's factual findings for clear error and its legal conclusions de novo. *Green*, 740 F.3d at 277.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment does not proscribe all contact between the police and citizens but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).

As a preliminary matter, at oral argument, Weatherspoon conceded that his brief detention was proper. Oral Argument 6:44-6:50 ("The Defense agrees that the officers had the right to detain Weatherspoon . . ."); Oral Argument 8:52-9:09 ("The police had the right to briefly detain, very briefly detain Weatherspoon and Hemby while they began the arrest of Espinoza . . ."). Because Weatherspoon now concedes that he was lawfully detained, we need not decide whether there was "reasonable and articulable suspicion" for the detention. *Reid v. Georgia*, 448 U.S. 438, 440 (1980); *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Therefore, the only issue before this Court is whether the resulting patdown search was unlawful.[3]

---

[3] The district court found that Weatherspoon did not raise any Fifth Amendment or *Miranda* arguments in his briefing related to the officer's question to Weatherspoon. J.A. 68. Nor does he in this appeal.

To proceed from a stop to a frisk, or patdown for weapons, the officer must reasonably suspect that the person "may be armed and presently dangerous." *Terry*, 392 U.S. at 30; *United States v. Mayo*, 361 F.3d 802, 805 (4th Cir. 2004). We look to the "totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417 (1981). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. The Supreme Court has explained that "[t]he purpose of [a patdown for weapons] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972*); see also United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988) ("Investigating officers may take such steps as are reasonably necessary to maintain the status quo and protect their safety during an investigative stop.").

Here, the totality of the circumstances supports the conclusion that Weatherspoon's search was objectively reasonable under the principles established by *Terry*. As stated previously, Weatherspoon conceded that his detention was lawful. Special Agent Jocys was left alone with Weatherspoon and Hemby while the other agents chased Espinoza, a known violent gang member that was suspected of crimes involving other individuals. Special Agent Jocys had her weapon drawn on them and told them to keep their hands up. At this point, Espinoza had not been captured. When Special Agent Jocys noticed that Weatherspoon made a furtive movement to his left, she asked whether either of the two men had a gun. Weatherspoon responded, "I do." J.A. 62. Weatherspoon's furtive

6

movement—after Special Agent Jocys, who was alone, commanded the two detainees to keep their hands up—made it objectively reasonable for Special Agent Jocys to ask whether Weatherspoon had a gun. After Weatherspoon admitted to having a weapon, it was unquestionably reasonable for the officers to pat down Weatherspoon for their safety.

In sum, Weatherspoon conceded that his initial detention was proper. Given the totality of the circumstances, we find it was objectively reasonable for the officers to pat down Weatherspoon. Therefore, the district court correctly denied Weatherspoon's motion to suppress.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*