**UNITED STATES of America, Appellee,**

v.

**Frank Joseph PERATE, Appellant.**

No. 83–5042.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1983.

Decided Oct. 14, 1983.

Law Office of Alan E. Weinstein (Alan E. Weinstein and Richard J. Preira, Miami Beach, Fla., on brief), for appellant.

Joe Knott, Asst. U.S. Atty., Raleigh, N.C. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., J. Douglas McCullough, Asst. U.S. Atty., John F. De Pue, Vincent P. Macqueeney, Dept. of Justice, Washington, D.C., on brief), for appellee.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

SPROUSE, Circuit Judge:

Frank Perate was convicted after a nonjury trial by the district court on one count each of possession with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 841(a)(1). He appeals, contending that his conviction was based on evidence obtained after a Constitutionally invalid stop of his automobile, and that the trial court erred in refusing to dismiss one count of the indictment after the government moved to dismiss several counts as part of an agreement between counsel. Perate also moves to strike the modification of his sentence made three months after his notice of appeal. We affirm, but remand for reinstatement of the original sentence.

I

Perate was arrested near Benson, North Carolina on September 13, 1982, at about six p.m., as he traveled north on Interstate 95 in a chauffeur-driven limousine. His limousine had been under surveillance intermittently that day.

Earlier that afternoon, Drug Enforcement Agent Michael Grimes had received a telephone call saying that a chauffeur driving two passengers from Florida to Pennsylvania had reported to his employer that he was carrying passengers in North Carolina who were acting strangely, had a lot of money, and were probably carrying drugs; the chauffeur added that he feared for his life. The chauffeur, Paul Trice, had telephoned the owner of the limousine company in Florida, who had in turn contacted a lawyer. The lawyer notified Michelle Dufay of the DEA Field Division Office in Miami, who then contacted Grimes in North Carolina at 4:24 p.m. Dufay gave Grimes the information about the chauffeur, along with the limousine's license number and the phone number of the lawyer who had given

her the information. Grimes could not reach the lawyer to substantiate the information.

Grimes contacted Agent Bill Wollick of the North Carolina State Bureau of Investigation (SBI), who called the North Carolina Vice Squad. Grimes and Wollick spoke to SBI Agent Baker, working with the Vice Squad, who said that the Vice Squad had already been told about the limousine. The hotel clerk at the Fayetteville, North Carolina Sheraton had reported the suspicious behavior of three persons who had arrived from Florida in a limousine earlier in the afternoon, paid cash for two rooms, and said they were stopping only for a short rest. The description and license plate of this limousine matched the information Grimes had. The SBI had begun surveillance of the hotel rooms and limousine based on the information from the hotel clerk, but ended it when agents noted no further suspicious behavior.

Grimes learned from SBI officials that Trice, the chauffeur, had registered for both rooms, and that the clerk did not know in which room Trice was actually staying. In addition, Grimes was told that the three had left a wake-up call for five p.m.

Next, Grimes telephoned the Assistant U.S. Attorney in Raleigh, who suggested that Grimes stop the limousine and search it if it continued north on Interstate 95. SBI agents sent to the Sheraton reported at 4:53 p.m. that the limousine and its occupants were still there. Grimes then drove north to arrange with other SBI agents a stop and search of the vehicle in Benson, North Carolina.

Shortly after 6 p.m. the limousine, approaching Benson on Interstate 95, was intercepted by several undercover agents in unmarked police vehicles and a uniformed trooper in a marked highway patrol car. After the marked car flashed its lights and siren, pulling the limousine over to the side of the road, two unmarked cars blocked the forward and rear paths of the limousine. The agents emerged with weapons drawn; Grimes went to the driver's door, motioned for the driver to get out of the car, and asked if he were Trice. Two other SBI agents went to the rear doors of the limousine. They smelled marijuana when the doors were opened and simultaneously saw the occupants in the back seat, partially undressed. Perate was arrested.

A search of the interior of the limousine revealed marijuana, cocaine, and drug paraphernalia. In the trunk, agents found two small vials with residual amounts of cocaine and an account book recording drug transactions. A "patdown" of Perate uncovered a small plastic box containing more cocaine.

Perate was charged in a five-count grand jury indictment with interstate transportation of a female for immoral purposes, in violation of 18 U.S.C. § 2421 (Count I); possession with intent to distribute approximately 8.40 grams of marijuana and 4.96 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts II and III); and distribution of marijuana and cocaine to a minor, in violation of 21 U.S.C. § 845(a) (Counts IV and V). Perate moved to suppress the physical evidence seized after his arrest as the product of an illegal seizure of his person, but after a hearing the United States Magistrate denied the motion.

At trial the government moved to dismiss Counts I, III, IV, and V. The prosecutor explained to the court that the parties had agreed to a bench trial on Count II, stipulating the evidence to be the same as that introduced at the suppression hearing. The government and Perate had agreed to frame the request as a government motion to dismiss, instead of a conventional plea bargain agreement, in order to preserve Perate's right to appeal the earlier denial of his motion to suppress. The court, however, refused to dismiss Count III, possession with intent to distribute cocaine, but dismissed Counts I, IV, and V. The court then found Perate guilty of the offenses charged in Counts II and III.

## II

Perate first contends that the initial halt of his limousine by the police was not an investigatory stop, but amounted to an ar-

rest requiring probable cause. He argues alternatively that even if the police's action is characterized as an investigatory stop, the information on which they acted was not sufficient to create a reasonable suspicion, and in either case the evidence seized as a result of the search should have been suppressed.

■ The police action which brought Perate's automobile to a halt was an investigative stop, not an arrest. Brief stops in order to determine the identity of a suspicious individual or to maintain the status quo while obtaining more information are permitted if reasonable in light of the facts known to the officers at the time. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968).

Perate claims the police actions escalated the stop to an arrest. He recites the blocking of his limousine with police vehicles and the drawn weapons of the officers in support of his contention that the arrest was effected when the limousine was stopped. As this court held in *United States v. Seni,* 662 F.2d 277 (4th Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 664 (1982):

> [t]he fact that the officer drew his gun does not necessarily elevate the stop into an arrest. Courts have held that an officer may draw his gun and conduct a frisk when justified as a reasonable precaution for protection and safety. (Citations omitted.)

662 F.2d at 283. *Accord United States v. Thompson,* 558 F.2d 522, 524 (9th Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978). *See also United States v. Worthington,* 544 F.2d 1275, 1279 (5th Cir.1975), *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977) (blocking path of airplane).

■ Here, the officers had information that one of the two men in the limousine feared for his personal safety, but did not know which of the two was Trice. Although the blockade of an automobile is an intrusion on the individual's rights, it was balanced by the necessity of neutralizing potential danger to policemen and one occupant of the limousine. *See Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1879. It is true that Agent Grimes stated at trial, "The minute I stopped that car he was under arrest." This was an isolated statement of Grimes as to a momentary subjective intent, unconnected to any plan or even a conversation with any other officer. Such an intent can, of course, be some evidence that the action taken was an arrest—but in and of itself it is not controlling. *Taylor v. Arizona,* 471 F.2d 848, 851 (9th Cir.1972), *cert. denied,* 409 U.S. 1130, 93 S.Ct. 948, 35 L.Ed.2d 262 (1973).

■ Perate alternatively contends that the police made the stop on insufficient information. We do not agree. To justify an investigative stop, the officers making it must have sufficient information for a reasonable suspicion, not the full probable cause necessary for an arrest.

■ In *Terry v. Ohio, supra,* the Supreme Court first announced the approach to be taken in evaluating investigatory stops accompanied by protective searches. The Court balanced the need for the search against the intrusion on the individual's rights and concluded that in each case the police officer must be able to point to "specific and articulable facts" and rational inferences from them in order to justify the intrusion. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879. *See United States v. Place,* —— U.S. ——, ——, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983) (balancing nature and quantity of intrusion on individual against importance of governmental interests). The requirements that an investigative stop must satisfy in order to be valid were considered again in *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). *Cortez* requires that there be "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity . . . ." *Id.* at 417, 101 S.Ct. at 694. In order to assess this, the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole

picture, the detaining officers must have a particularized and objective basis for suspecting the particular persons stopped of criminal activity. *Id.* at 417–18, 101 S.Ct. at 694–95. These objective manifestations form the basis for the inferences and deductions that law enforcement officials make; "the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* at 418, 101 S.Ct. at 695.

■ Here, the police knew that the suspects had come from Florida in a chauffeur-driven limousine, had a lot of money, acted strangely, and rented two motel rooms in the same name for a few hours' rest, paying cash. They also had information that the chauffeur feared for his safety and suspected that his passengers possessed drugs. The tips supplying this information arrived at Agent Grimes' office through DEA and SBI channels. We do not gauge the propriety of the investigative acts of police officers as if they take place in a vacuum. This information, conveyed to experienced police officers from two independent sources, created a reasonable suspicion that Perate was engaged in criminal activity, and justified the investigative stop.

Finally, Perate argues that the district court improperly denied the government's motion to dismiss Count III of the indictment, possession with intent to distribute cocaine. He maintains that the government moved to dismiss under Federal Rule of Criminal Procedure 48(a), and that the court had no discretion to deny the motion. The government contends that its motion is governed not by Rule 48(a), but by Rule 11(e)(2).

■ It is true that the trial court has little discretion in considering a government motion to dismiss made pursuant to Federal Rule of Criminal Procedure 48(a). It must grant the motion absent a finding of bad faith or disservice to the public interest. *Rinaldi v. United States,* 434 U.S. 22, 30, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977) (per curiam). Perate's argument that the motion in issue must be judged solely in ac-

cordance with the underlying rationale of Rule 48, however, misses its mark. The government's motion to dismiss Counts I, III, IV, and V was only part of a procedure implementing an agreement in which Perate would waive the right to a jury trial and stipulate facts which undoubtedly would have resulted in a conviction on Count II. Government and defense counsel had fully apprised the court of the purpose and the nature of the motion, although neither attempted to classify it under the Federal Rules of Criminal Procedure. Earlier pre-trial discussions between counsel evolved, essentially, into plea bargaining. Perate's initial goal in the negotiations was to limit the finding of guilt to a single count. He sought to avoid a guilty plea in order to preserve the right to appeal the district court's previous refusal to suppress the evidence obtained as a result of the police automobile arrest. To achieve those dual ends, counsel agreed to stipulate that the evidence given at the suppression hearing be offered in place of live testimony. He included Perate's admission of the material allegations of Count II of the indictment. It was stipulated, among other things, that at the time of his arrest he possessed almost 8½ grams of marijuana, that the young woman accompanying him appeared to be under the influence of drugs, and that the passenger compartment of the limousine in which he and the young woman were riding contained a partially-smoked marijuana cigarette. Included in the stipulation as well were laboratory reports containing the results of tests run on the substances seized from Perate and from the limousine.

The motion presented to the district court was part of the implementation of the entire agreement. Perate contemplated waiving his right to a jury trial and having the case tried on Count II on stipulated facts; Counts I, III, IV, and V would be dismissed. Because of indications in the laboratory reports that the white powder seized from Perate and from the limousine was in fact a substantial amount of cocaine, the trial court refused to dismiss Count III, posses-

sion of cocaine with intent to distribute. In colloquy with counsel, the court indicated that counsel, in effect, were presenting a plea bargain agreement in improper form. The government agreed with that observation. The government, after recess, then presented an amended motion moving for dismissal of Counts I, IV, and V with the understanding that the court would try Perate on Counts II and III on stipulated facts, supplemented by limited testimony.

 We cannot agree with the government that the motion in question should be considered as made to implement a plea bargain pursuant to Federal Rules of Criminal Procedure 11(e)(2). True, the district court observed the requirements of Rule 11(e)(2) before accepting Perate's waiver of his right to a trial by jury. It is also true that the facts contained in the stipulations virtually assured a finding of guilt on at least Count II. Not possessing the meaningful formality of an articulated plea as contemplated by Rule 11(e)(2), however, the stipulation could not have been accepted as a guilty plea.

The district court, in the exercise of its discretion, properly accepted Perate's waiver of a trial by jury. Perate was nevertheless entitled to trial, notwithstanding the stipulation. No matter that a non-judicial assessment of the facts might find them conclusively incriminating, Perate was entitled to a reasoned decision from the court after judging the law and the facts. He, of course, received that and was found guilty on both counts. That, however, was a finding of guilt, not Perate's formal admission of guilt by a guilty plea.

At the same time, the government's initial motion was not cloaked in the same authority as a usual Rule 48(a) motion to dismiss for some infirmity of the government case. Here the government moved for dismissal of Count III conditioned on Perate's waiver of a jury trial, and the stipulation of underlying facts which, together with uncontested testimony, were conclusive of his guilt on another count.

Indeed, before the amended motion was granted, the court satisfied itself that the conditions had been met by questioning Perate in detail and accepting the stipulation on the record. Since the initial motion to dismiss was conditional, we cannot say under the narrow facts presented by this case that the district court abused its discretion in denying the government's motion to dismiss Count III.

Perate also has moved to strike the district court's order of June 8, 1983, which modified his sentence by eliminating credit for time served in custody. We agree with him that the district court had no authority thus to modify his sentence. The proper filing of the notice of appeal on March 1, 1983, terminated the jurisdiction of the district court over this case, so that court had no power on June 8, 1983, thus to modify the sentence. *Berman v. United States,* 302 U.S. 211, 214, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937).[1]

Accordingly, we grant Perate's motion to strike the modification order of June 8. The judgment of the district court is therefore affirmed, except for the sentence modification, and the case remanded for reinstatement of the initial sentence.

AFFIRMED.

---

1. *Cf.,* however, Fed.R.Crim.Pro. 35 on correcting illegal and illegally imposed sentences and on reducing sentences.