Ira I. FOOTE, Jr., Plaintiff–Appellant,

v.

Keith DUNAGAN; G. Wayne Pike; Marty Stallard; Thomas Baird; H.T. Harris; Wythe County, Virginia; Mecklenburg County, Virginia; John Doe # 1; John Doe # 2; John Doe # 3, Defendants–Appellees,

and

Willis A. Woods, Defendant.

Ira I. FOOTE, Jr., Plaintiff–Appellee,

v.

Keith DUNAGAN, Defendant–Appellant,

and

G. Wayne Pike; Marty Stallard; Thomas Baird; Willis A. Woods; H.T. Harris; Wythe County, Virginia; Mecklenburg County, Virginia; John Doe # 1; John Doe # 2; John Doe # 3, Defendants.

Nos. 92–6522, 92–6523.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1994.

Decided Sept. 6, 1994.

---

**ARGUED:** Deborah C. Wyatt, Wyatt & Carter, Charlottesville, VA, for appellant. Kevin Scott Blair, Woods, Rogers & Hazlegrove, Roanoke, VA, for appellees. **ON BRIEF:** W. Fain Rutherford, Elizabeth K. Dillon, Woods, Rogers & Hazlegrove, Roanoke, VA, for appellees.

Before HALL and LUTTIG, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

Reversed by published opinion. Judge LUTTIG wrote the opinion, in which Judge K.K. HALL and Senior Judge HIRAM H. WARD joined.

## OPINION

LUTTIG, Circuit Judge:

Appellant/cross-appellee Ira T. Foote, Jr., instituted an action under 42 U.S.C. § 1983 following his arrest in April 1988, alleging a plethora of claims against eleven defendants. The district court dismissed all but four of Foote's claims and, adopting a magistrate-judge's report and recommendation, held for Foote on his claim that Deputy Sheriff Keith Dunagan used excessive force during his initial stop of Foote. The district court, however, awarded Foote only nominal damages and costs. Foote now appeals the district court's dismissal of his claims against Wythe County and the County's sheriff and its nominal damages award,[1] and Dunagan cross-appeals the district court's award against him. Concluding that Dunagan did not violate Foote's constitutional rights, we reverse the district court's judgment.

### I.

On April 13, 1988, Deputy Sheriff Keith Dunagan was working as a plain-clothes law

---

1. Foote also argues that the magistrate-judge's refusal to appoint counsel constituted an abuse of discretion. We have considered this claim, and determine that it lacks merit.

enforcement officer with the Wythe County Sheriff's Department. While he was at home eating lunch that day, Dunagan noticed a pick-up truck drive past his house, which is located near the end of an isolated private road. Observing that the truck had out-of-state license plates and that its driver—Foote—was wearing camouflage clothing, Dunagan suspected that Foote may have been hunting turkey out of season.

Dunagan followed Foote's pick-up in his unmarked vehicle, and radioed a police dispatcher to run a check on the vehicle's license plate number. The dispatcher subsequently informed Dunagan that the owner[2] of the truck was wanted in connection with an assault in Mecklenburg County, Virginia, and should be considered armed and dangerous, a "Rambo" type. J.A. at 73, 291. According to his own testimony, Foote was, in fact, wanted on an assault charge for striking an individual with a gun, *id.* at 387–88, 414–15, although those charges were apparently never prosecuted, *id.* at 419. Foote also was heavily armed at the time of the incident, carrying in the truck a fully loaded shotgun modified for quick firing, a loaded pistol also modified for quick firing, an unloaded pistol, and two magazines of extra ammunition. *Id.* at 199–202. Dunagan advised the dispatcher to send a marked car to assist him and then parked his vehicle, observing that Foote had turned down a short dead-end road.

When Foote's truck shortly thereafter emerged from the dead-end road, Dunagan noticed that Foote, who only had one hand on the steering wheel and was leaning to his left, was having difficulty turning his steering wheel, and feared that Foote may have been grasping a weapon with his other hand. Foote pulled his truck alongside Dunagan's unmarked vehicle, still with only one hand on the steering wheel, and asked Dunagan if he was a property owner in the area. When Dunagan responded that he was, Foote placed both of his hands on the steering wheel, at which point Dunagan exited his vehicle, drew his gun, pointed it at Foote, and identified himself as a Wythe County

deputy sheriff. He did not have time to display his badge.

Dunagan informed Foote that the owner of the truck Foote was driving was reported as wanted and dangerous, and requested identification from Foote. Foote cursed at Dunagan and refused to provide any identification. In what Foote himself testified was an effort to prevent him from fleeing the scene, J.A. at 72, Dunagan then reached into the truck to grab Foote's keys and unsuccessfully tried to pull Foote from the truck. After breaking free from Dunagan's grasp, Foote started his truck and drove off.

Dunagan pursued Foote. About a mile into the chase, Foote pulled off the road, stepped out of his truck and, squatting in a firing position, aimed his gun at Dunagan. After Foote and Dunagan exchanged gunfire, Foote re-entered his truck and drove away, with Dunagan again in pursuit. Further gunfire was exchanged during the chase. Several other officers, responding to Dunagan's call for assistance, parked their vehicles along the road Foote was following. Foote stopped his truck and exited the vehicle when he came to these police units but, rather than placing his hands up and lying down on the ground as instructed, Foote stood behind his truck's driver-side door. When Foote made a movement toward the truck's cab, one of the officers, believing Foote was attempting to go for a weapon, fired his shotgun at the windshield of Foote's truck. Foote was then taken into custody and transported to the Wythe County Jail. Foote suffered no injuries during the course of his apprehension, arrest and transportation to the jail.

Foote was convicted on January 6, 1989, in the Circuit Court of Wythe County of attempted murder and use of a firearm in such attempt. After the Virginia Court of Appeals reversed Foote's convictions on the grounds of self-defense, *see Foote v. Commonwealth*, 11 Va.App. 61, 396 S.E.2d 851 (Va.App.1990) (opinion by Cole, J.), Foote brought this action in federal district court, alleging various claims against Deputy Sher-

---

**2.** Although Dunagan testified that the dispatcher reported that the *driver* of the truck was wanted, J.A. at 291, the magistrate found that the dispatcher reported that the *owner* of the truck was wanted, *id.* at 73.

iff Dunagan, two other deputy sheriffs involved in arresting and transporting Foote, the sheriff of Wythe County, Wythe County itself, a Wythe County radio dispatcher, a Wythe County Commonwealth Attorney, a Wythe County Circuit Judge, and Mecklenburg County and its sheriff and dispatcher.

The district court dismissed all but four of Foote's claims, and referred to a magistrate the remaining claims, all of which were brought under section 1983: (1) that Dunagan illegally arrested Foote on a charge of attempted murder; (2) that Dunagan used excessive force in effectuating Foote's arrest; (3) that Deputy Sheriff Stallard used excessive force in effectuating Foote's arrest; and (4) that Deputy Sheriff Bailey used excessive force in transporting Foote to the Wythe County jail. After an evidentiary hearing, the magistrate found for the defendants on all claims except for the excessive force claim against Dunagan, as to which the magistrate found for Foote. Concluding, however, that Foote failed to establish any damages, the magistrate recommended awarding Foote only litigation costs and nominal damages. Over Dunagan's objections as to the question of liability, and Foote's objections as to, *inter alia*, damages, the district court adopted the magistrate's report and recommendation, and awarded Foote costs and nominal damages against Dunagan in the sum of $10.00.

Foote then brought this appeal, challenging the district court's award of only nominal damages, its dismissal of Wythe County and its sheriff and the magistrate's refusal to appoint counsel. Dunagan cross-appealed the court's finding of section 1983 liability against him. Because we conclude below that Dunagan did not employ excessive force during his initial investigatory stop of Foote, we need not address Foote's claims that Wythe County and its sheriff should be held liable for Dunagan's conduct or that the district court erred in awarding him only nominal damages.

## II.

■ The legality of an investigative stop, such as that here, turns on the dual inquiry of "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The court below did not question, and Foote does not challenge on appeal, Dunagan's authority to stop and question Foote on the basis of the dispatcher's report that the owner of the truck Foote was driving was wanted in connection with an assault and was armed and dangerous. *See United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985) (where an officer has a reasonable suspicion, grounded in specific and articulable facts, that a person he encounters was involved in or is wanted in connection with a completed felony, the officer may lawfully make a *Terry* stop to investigate that suspicion). The only issue before us, therefore, is whether Dunagan's actions during his initial stop of Foote were, given the circumstances, unreasonable. We hold that they were not.

■ First, Dunagan was justified in drawing his gun during the stop. An officer is "authorized to take such steps as [are] reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of [a *Terry*] stop." *Hensley*, 469 U.S. at 235, 105 S.Ct. at 683–84. Where, as here, an officer has been informed by a radio dispatcher that the owner of a vehicle is an armed and dangerous "Rambo type" and that he should approach the vehicle with caution, it unquestionably is reasonable for the officer to draw his weapon when approaching the vehicle to question its driver. *See United States v. Sinclair*, 983 F.2d 598, 602–03 (4th Cir.1993) (reasonable to draw weapons when stopping suspected drug traffickers who officers had no reason to believe were armed and dangerous); *United States v. Taylor*, 857 F.2d 210, 213–14 (4th Cir.1988) (permissible to draw weapons during stop of suspected drug traffickers, one with numerous prior convictions, including assault and assault with intent to murder); *United States v. Manbeck*, 744 F.2d 360, 376–77 (4th Cir.1984) (justified safety precaution to draw weapons during stop of tractor-trailer believed to be involved in drug smuggling), *cert. denied sub nom. O'Hare v.*

*United States,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *United States v. Perate,* 719 F.2d 706, 709 (4th Cir.1983) (reasonable precaution to draw weapon during investigatory stop of limousine where chauffeur had reported that passengers appeared to be carrying drugs, and that he feared for his life); *United States v. Seni,* 662 F.2d 277, 283 (4th Cir.1981) (drawing gun reasonable safety precaution where officers have reasonable suspicion of criminal activity), *cert. denied sub nom. Minton v. United States,* 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 664 (1982).

■ The district court effectively held that Dunagan's drawing of his weapon constituted an excessive use of force because Dunagan lacked probable cause to believe that Foote was actually the armed and dangerous suspect. Contrary to the district court's assumption, *see* J.A. at 82, however, probable cause was not required in order to justify Dunagan's drawing of his weapon during the *Terry* stop.[3] *See Hensley,* 469 U.S. at 229, 235, 105 S.Ct. at 680, 683–84; *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972) ("The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape."); *Terry,* 392 U.S. at 24, 27, 88 S.Ct. at 1881, 1883. The radio dispatch, notwithstanding that it did not describe the owner of the vehicle who was suspected to be armed and dangerous, was, under the circumstances, alone sufficient to justify Dunagan's decision to draw his weapon when approaching Foote's truck, and certainly was so in combination with Foote's suspicious movements immediately prior to the stop.[4] *See, e.g., United States v. Doffin,* 791 F.2d 118 (8th Cir.) (officer's approach to stopped vehicle with shotgun pointed at driver was reasonable precaution attendant to investigative stop where vehicle matched police radio description of vehicle believed to be getaway car for armed bank robbers), *cert. denied,* 479 U.S. 861, 107 S.Ct. 210, 93 L.Ed.2d 140 (1986). The Constitution does not require the officer who finds himself in such circumstances to "ask [the] question and take the risk that the answer might be a bullet." *Terry,* 392 U.S. at 33, 88 S.Ct. at 1886 (Harlan, J., concurring), *quoted in Moore,* 817 F.2d at 1108.

■ Second, Dunagan's attempt to grab Foote's keys and pull him from the almost-stationary truck to prevent him from driving off after he had refused to provide Dunagan the requested identification likewise did not violate Foote's constitutional rights. This brief encounter to prevent Foote's flight, *see Moore,* 817 F.2d at 1108 (brief but complete restriction of liberty valid under *Terry*), did not, contrary to Foote's claim, constitute the use of deadly force. *Compare, e.g., Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (fatal shooting). Rather, it was a measured attempt to effectuate a lawful *Terry* stop and to prevent an armed and dangerous suspect from flight. Such an attempt was eminently reasonable under the circumstances and wholly consistent with established precedent on the constitutional limits on the use of force during an investigatory stop. *See United States v. Haye,* 825 F.2d 32, 35 (4th Cir.1987) (wrestling to ground and

---

3. The drawing of the weapon, of course, did not convert the *Terry* stop of Foote into a custodial arrest. *Sinclair,* 983 F.2d at 602–03; *Manbeck,* 744 F.2d at 376–77; *Perate,* 719 F.2d at 709; *Seni,* 662 F.2d at 282–83; *United States v. Bull,* 565 F.2d 869, 870 (4th Cir.1977), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 545 (1978); *see also United States v. Moore,* 817 F.2d 1105, 1108 (4th Cir.) (perception that one is not free to leave does not convert a *Terry* stop into an arrest), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987).

4. The magistrate did not, as Foote contends that he did, discredit Dunagan's testimony that Foote's movements prior to being stopped— namely, driving with only one hand on the steering wheel and leaning to his side—led him to believe Foote might be concealing a weapon in his truck. The magistrate reasoned that, although Dunagan might initially have been concerned that Foote was grasping a weapon, he could not have feared for his safety at the moment he drew his gun, because Foote at that point had placed both of his hands on his steering wheel. J.A. at 83. That Foote had momentarily placed both hands on the steering wheel hardly diminished any concern that he might reach for a concealed weapon, and therefore in no way made Dunagan's decision to draw his weapon any less reasonable than had Foote kept one hand out of sight.

handcuffing fleeing suspect); *Tom v. Voida*, 963 F.2d 952, 958 (7th Cir.1992) (kneeling on and attempting to handcuff fleeing suspect); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989) (judging reasonableness of force used requires consideration of whether suspect is actively resisting investigation or attempting to evade it by flight).

We hold, therefore, that Dunagan did not violate Foote's Fourth and Fourteenth Amendment rights either by drawing his gun when he first stopped Foote, or by reaching for Foote's keys and grabbing him to prevent him from fleeing. The district court's judgment of liability against Dunagan on Foote's excessive force claim under section 1983 accordingly was in error.

### III.

For the above stated reasons, the judgment of the district court is reversed.

*REVERSED.*