Anthony James BRAXTON, Plaintiff,

v.

Michael L. MATTHEWS,
et al., Defendants.

Civ. A. No. 2:94–0273.

United States District Court,
S.D. West Virginia,
Charleston Division.

April 28, 1995.

Plaintiff contends the conduct of the Defendants violated his constitutional and civil rights when he was subjected to an investigatory stop, searched, arrested and allegedly strip searched. The State of West Virginia then instituted a forfeiture proceeding against Plaintiff's car in the Circuit Court of Kanawha County, West Virginia. The forfeiture action was dismissed and Plaintiff relies on the ruling of that court to support his contentions:

> "[T]he police did not have sufficient reasonable suspicion of criminal activity by the driver to support a stop of the Respondent vehicle, that the stop and subsequent investigation, search and arrest were unlawful and, thus, the Respondent vehicle was not seized pursuant to a lawful arrest." [1]

## I.

## COLLATERAL ESTOPPEL

Plaintiff contends the holding of the Circuit Court of Kanawha County acts to collaterally estop defendants from asserting the investigatory stop of Plaintiff's car, and the subsequent search and arrest of the Plaintiff were legal. Defendants, on the other hand, assert they are protected by "qualified immunity" from suit and Plaintiff may not use collateral estoppel offensively against them.

When applying collateral estoppel law to a prior state court decision, federal courts apply the law of the adjudicating state. Title 28 U.S.C. § 1738 ("[J]udicial proceedings [of any State] shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."). The law of West Virginia therefore applies to this case.

■ The leading case concerning collateral estoppel in West Virginia is *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). In *Syllabus* Point 2 of *Conley*, the Court held:

> by the state court judge.

Rudolph L. DiTrapano and Debra L. Hamilton, DiTrapano & Jackson, Charleston, WV, for plaintiff.

Charles R. Bailey, Shuman, Annand & Poe, Charleston, WV, for Matthews.

Steven P. McGowan and Jeffrey K. Phillips, Steptoe & Johnson, Charleston, WV, for Dodson.

John R. Teare, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for City of Charleston.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the motions of defendants L.G. Dodson, Michael Matthews and the City of Charleston for summary judgment. Plaintiff has responded and the defendants have replied. This matter is ripe for adjudication.

1. The state court's order is designated as "prepared by" plaintiff's then-counsel, and is signed

"Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:

'But where the causes of action are not the same, the parties being identical or in privity, the bar extends only to those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata.' Lane v. Williams,* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965)."

For collateral estoppel to apply, the first judgment must be a final judgment on the merits. *Syllabus* Point 3, *Conley, supra.*

Plaintiff suggests the offensive use of collateral estoppel should be treated similarly to defensive use of collateral estoppel. Such a suggestion is at odds with the Supreme Court of Appeals of West Virginia's admonition "that the offensive use of collateral estoppel is generally disfavored." *Tri–State Asphalt Products, Inc. v. Dravo Corp.,* 186 W.Va. 227, 230, 412 S.E.2d 225, 228 (1991), *citing, Conley v. Spillers, supra,* 171 W.Va. at 592–93, 301 S.E.2d at 223–24 (1983), *quoting, Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330–31, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). The foregoing admonition is particularly applicable when the defending party was neither a party, nor privy to a party to the earlier action. If a plaintiff were permitted to use collateral estoppel offensively in such a situation, the defending party's constitutional due process rights might be ignored. As held in *Syllabus* Point 8 of *Conley v. Spillers, supra:* "A fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim."

The forfeiture action was filed *by the State of West Virginia* against Plaintiff's vehicle; and the defendants clearly were not parties to the forfeiture proceeding. Thus, to determine whether they are collaterally estopped from asserting Plaintiff's rights were not violated, the Court must examine whether the defendants were in privity with the State of West Virginia in the forfeiture action.

*Conley v. Spillers,* 171 W.Va. at 594, 301 S.E.2d at 226, is instructive in regard to what a court must examine when determining whether a party is in privity with a party to earlier litigation for collateral estoppel purposes:

"The attempt to assert a judgment against a person who is not a party to the original action can be done if such person is in privity with a party to the earlier litigation. In *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 95 (5th Cir.1977), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93, the following categories of privity were identified:

'Federal courts have deemed several types of relationships "sufficiently close" to justify preclusion. First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party.... Second, a non-party who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.'" (Citations and footnotes omitted)

Although the *Conley* court acknowledged the foregoing was not "an exhaustive itemization of what constitutes a 'privy' status" to bind a non-party to an earlier judgment[2], it is instructive as to the type of relationships that may qualify for privy status.

■ The Court concludes no defendant had a subjective interest in the outcome of the forfeiture proceedings. Dodson submitted an affidavit in support of the State's case, and Matthews verified the allegations in the

---

2. The *Conley* court also cited to the Restatement (Second) of Judgments, *Introduction* p. 1 (1982): " 'The concept of "privity" refers to the cluster of relationships, §§ 34 to 61, under which preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party, for example, the relationship of the successor in interest.' "

State's forfeiture petition. Neither defendant participated in any other way in the forfeiture proceeding. The same applies for the City of Charleston; the forfeiture action was brought by the State through the Kanawha County prosecutor's office, not the City of Charleston. The defendants are not successors in interest to the State; they did not control the forfeiture proceeding (the State did); and because of their minimal participation, their interests were not adequately represented in the earlier action.

Plaintiff here attempts to use collateral estoppel not as a shield, but as a sword. He seeks to preclude the defendants from asserting qualified immunity based upon the decision rendered in the state forfeiture proceeding. The Court concludes, however, that offensive use of collateral estoppel against the defendants would violate their constitutional due process rights because they had no opportunity to litigate the claim. *Syllabus* Point 8, *Conley, supra.* Moreover, they were not in privity with the moving party, the State of West Virginia.

"The application of the doctrine of collateral estoppel is discretionary with the trial court[.]" *Syllabus* Point 7, in part, *Conley, supra.* See *Degennaro v. Town of Riverhead,* 836 F.Supp. 109, 110 (E.D.N.Y.1993) ("A federal trial court is granted broad discretion to determine when collateral estoppel is to be used offensively. *Parklane Hosiery Co. v. Shore,* [*supra*].*"). In light of the foregoing, the Court concludes application of collateral estoppel against defendants to be inappropriate.

## II.

### QUALIFIED IMMUNITY

Next the Court must examine whether Defendant is protected from suit by the doctrine of qualified immunity. In *Wiley v. Doory,* 14 F.3d 993, 995 (4th Cir.1994) our Court of Appeals discussed generally the application of qualified immunity as follows:

"Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations and footnote omitted). 'In determining whether the specific right allegedly violated was "clearly established," the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.' *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Moreover, 'the manner in which this [clearly established] right applies to the actions of the official must also be apparent.' *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992) (*citing Tarantino v. Baker,* 825 F.2d 772, 774–75 (4th Cir.1987), *cert. denied,* 489 U.S. 1010, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). As such, if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. *Tarantino,* 825 F.2d at 775."

See *Reynolds v. Hale,* 855 F.Supp. 147, 149 (S.D.W.Va.1994) (Haden, C.J.).

The test for determining whether qualified immunity is available for a particular defendant is an "objectively reasonable" one. *Shaw v. Stroud,* 13 F.3d 791, 801 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied,* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). Describing application of the "objectively reasonable" qualified immunity test to actions of police officers, our Court of Appeals has observed:

"[O]fficers are entitled to qualified immunity when they rely on standard operating procedures, if that reliance is reasonable. *Vizbaras v. Prieber,* 761 F.2d 1013, 1015 (4th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). A police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991)." *Shaw v. Stroud, supra,* 13 F.3d at 801.

*See Gooden v. Howard County, Maryland,* 954 F.2d 960, 965 (4th Cir.1992) ("[T]he basic purpose of qualified immunity ... is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (qualified immunity necessary because 'permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.').")*; Reynolds v. Hale,* 855 F.Supp. at 149 (" 'The very idea of reasonableness requires that courts accord interpretative latitude to official judgments.' *Torchinsky [v. Siwinski* ], 942 F.2d [257,] 261 [ (4th Cir.1991). '[T]he determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made ... in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions.' *Pritchett v. Alford,* 973 F.2d [at] 313[.]").

The "express purpose" of the test of objective reasonableness is to accord "police officers latitude in exercising what are inescapably discretionary functions replete with close judgment calls." *Gooden v. Howard County, Maryland,* 954 F.2d at 964. Thus, the test has been described as a "highly deferential" one. *Rainey v. Conerly,* 973 F.2d 321, 324 (4th Cir.1992), and "[t]he immunity is to be applied with due respect for the perspective of police officers on the scene and not with the greater leisure and acquired wisdom of judicial hindsight." *Gooden v. Howard County, Maryland,* 954 F.2d at 964–65.

With the foregoing standard for application of the qualified immunity defense in mind, the Court turns to the incidents during which the alleged violation of rights occurred.

## A.

### THE INVESTIGATIVE STOP

Plaintiff contends defendants violated his civil rights when they stopped his vehicle. Defendants argue the stop was merely for investigative purposes; Plaintiff contends the stop amounted to an arrest. Whether the stop was an arrest or merely investigative determines the standard by which the stop may be effected legally.

Legally to effect an investigative stop of a suspect of a criminal investigation, the officer stopping the suspect must have a "reasonable articulable suspicion" to do so. *See United States v. Harris,* 31 F.3d 153, 155 (4th Cir.1994) *citing, Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968); *United States v. Turner,* 933 F.2d 240, 243 (4th Cir.1991) ("An investigatory detention does not violate constitutional standards if the officer has a reasonable articulable suspicion of criminal activity."); *United States v. Perate,* 719 F.2d 706, 709 (4th Cir.1983) ("Brief stops in order to determine the identity of a suspicious individual or to maintain the status quo while obtaining more information are permitted if reasonable in light of the facts known to the officers at the time.").

A showing of reasonable articulable suspicion for an investigatory stop need not reach the level of a showing of probable cause as is necessary to make an arrest. *United States v. Harris,* 39 F.3d 1262, 1269 (4th Cir.1994) ("[A]n investigatory stop of a vehicle can be justified on a reasonable suspicion of illegal activity instead of probable cause."); *United States v. Hines,* 943 F.2d 348, 352 (4th Cir.), *cert. denied,* 502 U.S. 993, 112 S.Ct. 613, 116 L.Ed.2d 635 (1991) ("In making an investigative stop in accordance with *Terry,* [*supra,*] a policeman is not required to assert a probable cause basis for believing that criminal activity is underway. Rather, an officer may stop a person when he has 'reasonable articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.' *United States v. Place,* 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)."); *United States v. Moore,* 817 F.2d 1105, 1107 (4th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987); *United States v. Alpert,* 816 F.2d 958, 960 (4th Cir.1987) ("A *Terry* -stop falls between a full-blown seizure requiring probable cause and a consensual encounter not implicating

the Fourth Amendment, and is justified on less than probable cause because it is substantially less intrusive than a traditional arrest. The interests of crime prevention and detection and police officers' safety support the intrusion as reasonable, provided the police have a reasonable, articulable basis for suspecting criminal activity."); *United States v. Perate,* 719 F.2d at 709 ("To justify an investigative stop, the officers making it must have sufficient information for a reasonable suspicion, not the full probable cause necessary for an arrest."); *United States v. Le-Fevre,* 685 F.2d 897, 899 (4th Cir.1982); *United States v. Dodier,* 630 F.2d 232, 234 (4th Cir.1980); *United States v. Constantine,* 567 F.2d 266, 267 (4th Cir.1977), cert. denied, 435 U.S. 926, 98 S.Ct. 1492, 55 L.Ed.2d 520 (1978). The Fourth Amendment does not require police officers "to simply shrug [their] shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). *Accord, United States v. Taylor,* 857 F.2d 210, 213 (4th Cir. 1988).

Plaintiff contends here the stop was so intrusive as to constitute an arrest, requiring the higher standard of probable cause rather than the reasonable suspicion necessary for an investigatory stop. Evaluating whether a stop constitutes an arrest or a mere investigatory stop under *Terry v. Ohio, supra,* requires consideration of all the facts incident to the stop. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) ("[T]he totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture, the detaining officers must have particularized and objective basis for suspecting the particular person stopped of criminal activity."); *United States v. Manbeck,* 744 F.2d 360, 376 (4th Cir.1984), cert. denied sub nom., *O'Hare v. United States,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985) ("Some confusion exists in the area of warrantless detentions because there are 'seizures' of a person which are limited and need only a reasonable suspicion, as in *Terry v. Ohio,* and there are 'seizures' of a person which are so restrictive that they are indistinguishable from an arrest and require

probable cause[.] Both kinds of seizures involve detentions where the person detained is not technically free to leave while the officer pursues the investigation, but they differ in degree. Which of these two types of seizures has occurred can only be identified by examining the characteristics of each particular detention in view of permissible *Terry* stops, and by comparing the seizure to the essential attributes of a formal arrest." (Citations and footnotes omitted).).

■ The mere perception one is not free to leave the scene of the stop does not turn a *Terry* -stop into an arrest. *United States v. Moore,* 817 F.2d at 1108, *citing United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir. 1982), cert. denied sub nom., *Cabrera–Martinez v. United States,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446, *and cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983). *See United States v. Sinclair,* 983 F.2d 598, 603 (4th Cir.1993). Moreover, "[a] brief but complete restriction of liberty is valid under *Terry,* [and] [c]ourts have held that a lawful stop does not necessarily become a custodial arrest when circumstances cause police officers to draw their guns, ... use force or threats of force, ... or handcuff suspects." *Id.* Accord, *United States v. Harris,* 39 F.3d at 1269; *United States v. Sinclair,* 983 F.2d at 603. Neither does the blocking of one's vehicle by several police cars constitute an arrest. *United States v. Taylor,* 857 F.2d at 214; *United States v. Perate,* 719 F.2d at 709.

■ In this case the stop was restrained; although Plaintiff may have perceived he was not free to go because the officers commenced questioning him, the police did not draw their weapons, use or threaten him with force, or handcuff him (prior to arresting him). The Court concludes the stop of the plaintiff qualifies as a *Terry* or investigatory stop requiring only a reasonable articulable suspicion, rather than an arrest requiring probable cause.

Plaintiff contends defendants did not have a "reasonable articulable suspicion" to make the investigatory stop. It is the conduct and belief *of the Defendant* that governs whether qualified immunity will apply to his actions.

"A police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991)." *Shaw v. Stroud,* 13 F.3d at 801. The reasonable articulable suspicion standard is a lenient one. *United States v. Gooding,* 695 F.2d 78, 84 (4th Cir.1982) ("[T]he constitutional requirement of a 'reasonable articulable suspicion' for police investigative seizures has come justifiably to be a lenient one[.]"). When considering whether a specific incident lends credence to an officer's contention he had reasonable suspicion to make a stop, the circumstances comprising the incident must be viewed as a whole. *United States v. Manbeck, supra; United States v. Constantine,* 567 F.2d at 267 ("Assessing the need for a brief stop, 'the circumstances before (the officer) are not be dissected and viewed singly; rather they must be considered as a whole.' *United States v. Hall,* 174 U.S.App.D.C. 13, 15, 525 F.2d 857, 859 (1976)."). If the defendants reasonably believed their conduct during the investigative stop was lawful they are protected by qualified immunity for that conduct.

■ The Court concludes the evidence shows the defendants had a reasonable articulable suspicion to commence the investigatory stop. As far as defendant Dodson is concerned, his participation in the investigatory stop consisted only of ordering other officers to stop Plaintiff's vehicle. His justification for ordering the investigatory stop is as follows: at the time of the stop, Dodson was a lieutenant in the Kanawha County Sheriff's Office; he had over ten years experience investigating narcotics transactions; received special training and a salutary award for drug law enforcement by the federal Drug Enforcement Administration. Dodson was conducting covert anti-drug surveillance of the Summers Street area of Charleston at the time of the incident. It is undisputed Summers Street had a reputation as a high crime area, and Dodson had *personally* observed at least fifty drug transactions in that immediate area during the course of the year prior to the stop. Dodson observed the Plaintiff exit his car and enter the Middle East Mart on Summers Street for a very brief period of time and return to his car. Plaintiff did not immediately drive away but stayed in his car. The Plaintiff's car was an older model Oldsmobile with tinted windows, wide chrome mag tires and a temporary license plate. Dodson also observed two unidentified men approach other vehicles and pedestrians on Summers Street immediately before the stop was ordered. When the two men reached Plaintiff's vehicle, one of them leaned inside for a few minutes and then withdrew. It appeared to Dodson that the man had nothing in his hands when he leaned into the passenger side of Plaintiff's car, but that he was attempting to conceal a package of some sort as he withdrew. The two unidentified men then left the scene rapidly. It appeared to Officer Dodson that the man who leaned into Plaintiff's car with nothing in his hands had been attempting to conceal a package of drugs. Therefore, Dodson ordered other officers, including officer Matthews, to stop the Plaintiff's car.

From the foregoing, it seems clear Dodson had a reasonable articulable suspicion to order the stop of Plaintiff's car. He reasonably believed from his experience surveilling drug transactions in general and on Summers Street in particular that he had witnessed an illegal drug transaction. Therefore, the Court concludes defendants are protected from suit by qualified immunity, and their motions for summary judgment on that issue should be **GRANTED.**[3]

---

**3.** The standard used to determine whether a motion for summary judgment should be granted or denied was stated by our Court of Appeals as follows:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

## B.

### SEARCH AND SEIZURE

Officer Matthews, who arrived on the scene pursuant to Officer Dodson's order to stop the Plaintiff's car, was preparing to make a protective search of the vehicle when he smelled what he believed to be marijuana as Plaintiff exited the car. Another officer, Thomas Ranson also smelled marijuana coming from Plaintiff's car. When he looked through the car, Matthews saw a jacket. He began patting down Plaintiff's jacket and felt a bulge in one of the pockets. He placed his hand in the jacket pocket and removed a number baggies containing marijuana. Plaintiff was then put under arrest.

▉ A police officer may search a vehicle legally when he smells the odor of marijuana. *United States v. Manbeck,* 744 F.2d 360, 380 n. 34 (4th Cir.1984), *cert. denied sub nom., O'Hare v. United States,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985) ("A strong, emanating odor of marijuana comes within the 'plain view' doctrine and need not be ignored by officers."). Plaintiff contends Officers Matthews and Ranson could not have smelled the marijuana and without that smell, Matthews violated Plaintiff's rights by searching the car and jacket. Plaintiff's contention is not supported by the evidence.[4] Therefore, the Court concludes the odor of marijuana apparent to Officers Matthews and Ranson was sufficient to invoke the "plain view" doctrine and to warrant a search of Plaintiff's car. The search for and subsequent seizure of the marijuana did not violate Plaintiff's rights and summary judgment on the search issue will be **GRANTED** to Officer Matthews and the City of Charleston.

## C.

### OTHER CLAIMS

Plaintiff claims he did not put marijuana in his jacket. Therefore, no marijuana was found by Officer Matthews and there was no basis to arrest him. Plaintiff also complains he had $2600.00 in one-hundred dollar bills in the jacket pocket, and that Officer Matthews seized the money and failed to return it to him. Officer Matthews and other officers involved in the incident state no money was found in Plaintiff's jacket, only the marijuana. The Court concludes Plaintiff has alleged his rights were violated insufficiently to withstand the motion for summary judgment on those claims. *Shaw v. Stroud,* 13 F.3d at 798 ("The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient." (Citations omitted)). Summary judgment is thus **GRANTED** to the defendants in regard to the arrest and alleged seizure of Plaintiff's money.

▉ Plaintiff also contends his rights were violated when he was allegedly strip searched by Matthews. Plaintiff was arrested for possession with intent to distribute marijuana, a felony. He was placed in a cell

---

(1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id." Shaw v. Stroud,* 13 F.3d at 798.

4. For support, Plaintiff cites the affidavit of Lenny Henry who purports to be an expert in law enforcement. Pending are the City of Charleston's motions in *limine* and to strike the affidavit and testimony of Henry as untimely filed. Plaintiff has not responded to the motions and the response period has lapsed. *L.R.Civ.P.* 4.01(c). The Court concurs with the defendants position in this regard and **GRANTS** the motion to **STRIKE** the affidavit of Henry as untimely under the local rules and insufficient under *F.R.Civ.P.* 26(a)(2).

with other prisoners. Because he was arrested for an offense involving illegal contraband and placed in a cell with other prisoners, the strip search was not unconstitutional. Precedent in this Circuit establishes a strip search may be appropriate in those circumstances. *See Logan v. Shealy,* 660 F.2d 1007, 1013 (4th Cir.1981). Therefore, defendants' motions for summary judgment on the strip search issue is **GRANTED.**

Similarly, because of the foregoing analyses, Plaintiff's allegation of a civil conspiracy to arrest him and that the City of Charleston utilized unconstitutional or illegal customs or policies against him must fail. The evidence presented does not support Plaintiff's allegations. *Shaw v. Stroud, supra.* Defendants' motions for summary judgment on those issues will be **GRANTED** also.

### III.

### ATTORNEY FEES

 Three defendants have also made motions for attorney fees pursuant to 42 U.S.C. § 1988(b). The City of Charleston and two defendants previously granted summary judgment, Bobby Moore and Thomas Chabot seek attorney fees for a cause of action for which discovery was conducted but which was thereafter abandoned by the Plaintiff. A prevailing defendant may receive attorney fees if the plaintiff's claim is frivolous, unreasonable or groundless at the time filed, or if the plaintiff continues to litigate such a claim when it clearly became so. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); *Hutchinson v. Staton,* 994 F.2d 1076, 1080 (4th Cir.1993). The Court concludes an award of attorney fees is not warranted in this instance. The motions for attorney fees are **DENIED.**

### IV.

### CONCLUSION

Based upon the foregoing, Defendants' motions for summary judgment are **GRANTED.**

**5.** All other outstanding pending motions are **DE-**

The motions for attorney fees made by the City of Charleston, Bobby Moore and Thomas Chabot are **DENIED.**[5]